1
2
3            UNITED STATES DISTRICT COURT
4            EASTERN DISTRICT OF WASHINGTON
5
6
7   LINDA KABRICH, an individual      )
8                        Plaintiff,   )
9   vs.                               )
10  ALLSTATE PROPERTY AND             )    **NO. CV-12-3052-LRS**
    CASUALTY INSURANCE                )
11  COMPANY d/b/a ALLSTATE            )    **ORDER RE CROSS**
12  INSURANCE COMPANY d/b/a           )    **MOTIONS**
    ALLSTATE NORTHWEST                )
13  PROPERTY, a foreign               )
14  corporation licensed to do        )
    business in the State of          )
15  Washington,                       )
16                        Defendant,  )
17

18      **BEFORE THE COURT** is Defendant Allstate Insurance Company's Motion
19  for Summary Judgment Dismissal (ECF No. 122) and Plaintiff Linda Kabrich's
20  Cross-Motion For Summary Judgment/Motion For Certification (ECF No. 135). The
21  motions were heard with oral argument on July 24, 2014. J. Jay Carroll, Esq. argued
22  for Plaintiff. Rory W. Leid, III, Esq., argued for Defendant.
23
24  **I. BACKGROUND**
25      The facts are largely undisputed in this case and have been set forth in the
26  Order Re Defendant's Motion For Partial Summary Judgment (ECF No. 83), entered
27  August 30, 2013, which motion sought to dismiss Plaintiff's Insurance Fair Conduct
28  Act (IFCA) claim and Plaintiff's claim for attorney's fees. The Court concluded that

**ORDER - 1**

1

2    matter finding it was unable to rule on the motion until the close of discovery. The

3    Court found, however, that it could not be said that Plaintiff had been denied

4    coverage based on the payment of benefits that had been made at that juncture.[1] The

5    Court was unable to determine, though, which outstanding benefits claimed had not

6    yet been paid. The Court further determined that Plaintiff had not provided sufficient

7    information at that juncture to permit the Defendant to reasonably adjust her

8    remaining claim(s). ECF No. 83 at 4. The Court is now tasked with ruling on all

     claims that remain pending.

9

10   **II.  UNDISPUTED FACTS**

11       Ms. Kabrich brings this action against her homeowner insurer, Allstate,

12   alleging that Allstate failed to fulfill its contractual obligations to her and acted

13   unreasonably by denying her benefits.

14

15   **A.  The Policy**

16       Allstate issued to Plaintiff a Renewal Deluxe Homeowners Policy ("Policy")

17   for her home at 1416 S. 12th Avenue, Yakima, Washington, bearing policy number

18   076452424, effective September 16, 2010 through September 16, 2011. ECF No.

19   144-1. The policy was in effect at the time of the freezing loss. Section 3 of the 2010

20   Policy states that Plaintiff[2] has a contractual duty to submit information regarding her

21   claim:

22   _____

23       [1]The Declaration of Jennifer P. Dinning was sufficient evidence that coverage
     was accepted for the loss. ECF No. 65-2. The declarant included a payment log
24   for the Kabrich claim showing that the total payments made through March 27,
25   2012 were $136,527.53 for Dwelling Protection Coverage and $50,607.60 for
     Personal Property Protection Coverage.
26

27       [2]The term "we" in this paragraph refers to Allstate, as the insurer under the
     Policy and the term "you" refers to Plaintiff Kabrich, as the insured under the
28   Policy. These terms are in bold in the original certified Policy.

**ORDER - 2**

3. **What You Must Do After a Loss**

In the event of a loss to any property that may be covered by this policy, **you** must:

* * *

c) separate damaged from undamaged personal property. **Give us a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed**.

* * *

f) as often as **we** reasonably require:

1) show **us** the damaged property.

* * *

g) within 60 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;

2) the interest **insured persons** and others have in the property, including any encumbrances;

3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;

* * *

ECF No. 144-1 at 17. (Emphasis added and in the original).

The Policy also set forth the insurer's settlement options in the event of a covered loss:

4. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For a Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss **we** will notify **you** of the option or options **we** intend to exercise [no punctuation in original]

**ORDER - 3**

ECF No. 144-1 at 17. (Emphasis in the original).

The applicable[3] Policy coverages and limits of liability are as follows:

| Coverage | Limits of Liability |
|---|---|
| Personal Property Protection - Reimbursement Provision | **$109,200** |

ECF No. 144-1 at Page 2.

Defendant Allstate has paid Plaintiff the Personal Property limits of liability in the amount of $109,200 for contents and $5,460 for debris removal, despite not having a completed inventory from the insured, Ms. Kabrich and despite numerous letters advising Plaintiff that Allstate needed a completed inventory.

## B.  Post–Damage Communications Between Plaintiff and Allstate

On **May 11, 2011**, Allstate sent Plaintiff the following communication stating:

> I do regret that you have experienced damage to your property. I realize this is a difficult time for you and do appreciate your efforts in assisting me in the processing of your claim. In order to process your claim properly, we do need some additional information from you.
>
> In order to assure a more accurate evaluation of your damaged items, please provide us with the following information: The approximate ages of the items destroyed and the approximate original cost of each item.
>
> Enclosed please find the incomplete estimate which needs additional information. **It will be important to provide as much information as possible in order for Allstate to properly evaluate your damaged contents.** I have also included an example of a completed inventory form so you can see the type of information we are looking for. Ages are also needed for proper evaluation. I do understand you may not know the exact date. If you would like, you can use an average age for items in a particular category. Enclosed you will find a copy of an average age work sheet. You can use the worksheet if you like, or you can

---

[3]Plaintiff does not allege that any amount is due and owing under her structure claim and Allstate has paid $136,453.13 under the Dwelling Protection Policy coverage.

**ORDER - 4**

1    add the ages of each item individually.

2    Please let me know if there is anything that I can assist you
     with in the handling of your claim. You can reach me at
3    (425)231-7360 or 1-800-597-9001 ext. 8557**.**

4    (ECF No. 72-1).  (Emphasis added).

5
6    On **May 18, 2011**, Allstate sent another communication requesting Plaintiff's

7    assistance in reviewing an inventory list provided by Rainbow International:

8    Recently, I received a copy of the list of destroyed or
     non-restorable contents items that resulted from the
9    above referenced loss. This list was provided by
     Rainbow International. **Allstate has started to input the**
10   **information into our estimating system, and we need**
     **your assistance to make sure we accurately evaluate**
11   **the damages.**

12   I have enclosed a copy of the inventory list. Please
     review the items  on the list and provide the approximate
13   age of each item and the approximate original cost of the
     items. If you would prefer to apply an average age to the
14   items based on category, you can do that. I have also
     enclosed an average age worksheet for your use if you
15   would prefer.

16
17   Thank you for your help. Please contact me if you have
     any questions or concerns.
18
19   *Id*. (Emphasis added).

20   On **June 17, 2011**, Plaintiff hired TPI to, among other things,  prepare an

21   estimate of work necessary to repair the structural damage caused to her house by

22   the water release, to inventory the contents of her home that were damaged and to

23   clean those items of personal property that were salvageable.  ECF No. 22 at 5.

24   Allstate never formally (or informally) approved or consented to the arrangement

25   Plaintiff had with TPI.

26
     On **June 29, 2011**, Allstate again wrote to Plaintiff asking for paperwork.
27
28   That communication reads**:**

**ORDER - 5**

> We are writing to update you on the status of the claim listed above.
>
> Currently:
>
> • Our investigation of the loss is continuing.
>
> • **We are waiting for paperwork from you.**
>
> • **We are just waiting for your contents list for us to wrap up this claim for you. Please send to us as soon as possible so we can finish up your claim. If there is anything we can help you with please give us a call**.
>
> We will continue to update you on the status of the claim until it is resolved.
>
> Allstate Insurance Company values you as a customer and appreciates your business. If you want to discuss any concerns or questions regarding the claim process, please feel free to call me at 800-497-7940 Ext. 4040, and refer to the claim number listed above.

*Id.* (Emphasis added).

On **August 2, 2011**, Allstate sent another communication to Plaintiff regarding her claim status and again requesting paperwork from her. The letter reads:

> We are writing to update you on the status of the claim listed above.
>
> Currently:
>
> • **We are waiting for paperwork from you**.
>
> • **We are waiting for your list of damaged personal property.**
>
> We will continue to update you on the status of the claim until it is resolved.
>
> Allstate Insurance Company values you as a customer and appreciates your business. If you want to discuss any concerns or questions regarding the claim process, please feel free to call me at 800-497-7940 Ext. 4040, and refer to the claim number listed above.

*Id.* (Emphasis added).

On **October 28, 2011**, Allstate sent another communication informing

**ORDER - 6**

Plaintiff about her requested storage extension and asking her for direction

regarding whether to dispose of the non-restorable items.  This letter reads:

> I am writing to confirm that we have agreed to extend
> contents storage thru Rainbow to 12/4/2011. Rainbow
> has pre billed storage and we have issued a check for
> $5,586.53. Please understand that you will become
> responsible for storage charges after 12/4/2011.
>
> We understand that you have not authorized non
> restorable items to be disposed. **Please know that we
> have pre-paid Rainbow to dispose of these items. If
> you do not wish to dispose of the items, please let me
> know at your earliest convenience so that we can
> request a refund.**
>
> Please feel free to contact me at the number listed below
> with any questions or concerns.

*Id.* (Emphasis added).

On **March 29, 2012**, Allstate sent communication to Plaintiff's then

attorney Mr. Finney stating:

> Re: Your Client's Claim Status
>
> Dear Finney, Falk & Naught PLLP,
>
> We are writing to update you on the status of the claim
> listed above.
>
> Currently:
>
> • **We are waiting on the additional information to be
> submitted for your client's damaged contents**.
>
> We will continue to update you on the status of the claim
> until it is resolved.
>
> If you want to discuss any concerns or questions
> regarding the claim process, please feel free to call at
> 800-497-7940 Ext. 4434056 and refer to the claim
> number listed above.

*Id.* (Emphasis added).

On **June 5, 2012**, Allstate's counsel faxed[4] another communication to

---

[4]Transmission report indicates facsimile transmission was successful.

**ORDER - 7**

Plaintiff's attorney Mr. Finney regarding the status of the Plaintiff's content claim, which read:

> Dear Mr. Finney:
>
> **It is my understanding that your client has had the opportunity to review her additional contents in the above-referenced matter. However, I have not received an updated content claim from your client. Please provide Allstate Property and Casualty Insurance Co. ("Allstate") with a status regarding your client's content claim and when we may expect to receive any additional claim for contents if one is forthcoming. Please forward your client's content claim to our office no later than Monday, June 18, 2012.**
>
> I look forward to hearing from you.
>
> You are respectfully advised that Allstate requires full and complete compliance with all of the terms and conditions of the policy. Allstate reserves all of its rights and defenses, and no waiver nor estoppel is intended nor should be inferred.
>
> Sincerely,
>
> COLE, WATHEN, LEID & HALL, P.C.
>
> Sent without signature to avoid delay
>
> Rory W. Leid

*Id.* (Emphasis added).

On **July 23, 2012**, Allstate's attorney sent via E-mail and U.S. Mail another communication to Plaintiff's next attorney Mr. Aiken, again requesting Plaintiff's completed inventory. This letter reads:

> Dear Mr. Aiken:p[sic]
>
> This letter follows our prior correspondence in this matter regarding your client's
>
> Personal Property Inventory Claim. **Allstate Property and Casualty Insurance Company ("Allstate") is still awaiting receipt of your client's Personal Property Inventory Claim in the above-referenced matter**. Please provide your client's completed inventory no later than **Thursday, August 2, 2012.**

**ORDER - 8**

You are respectfully advised that Allstate requires full and complete compliance with all of the terms and conditions of the policy. Allstate reserves all of its rights and defenses, and no waiver nor estoppel is intended nor should be inferred.

Sincerely,

COLE, WATHEN, LEID & HALL, P.C.

Sent without signature to avoid delay

Rory W. Leid

*Id.* (Emphasis added and in original).

On **April 1, 2014**, Allstate's counsel sent Plaintiff's third and current attorney Mr. Carroll a letter advising that Allstate had been unable to complete its investigation due to factors outside of its control. That letter states:

Dear Mr. Carroll:

As you are aware, Allstate has been attempting to investigate your client's contents for several years, both prior to and during the above-referenced litigation. As you are also aware, Allstate has been unable to complete its investigation due to factors outside of its control, including the withholding of access to your client's personal property by her retained contractor, TPI Construction.

**To date, Ms. Kabrich has not provide a complete inventory to Allstate.** In her deposition, Ms. Kabrich testified that she believed she had retained TPI Construction to perform an inventory. To date, TPI has not provided Allstate with a complete inventory of Ms. Kabrich's personal property items. Ms. Kabrich's contents limits and payments already provided are as follows:

| Personal Property Protection | |
|---|---|
| • $500 all Peril Deduction Applies | $109,200 |
| Debris Removal | 5% ($5,460) |
| Payments Made Prior to 3/20/14 | $50,607.60 |
| Remaining Limit | $64,052.40 |

As you are aware, Allstate's inspection of your client's

**ORDER - 9**

contents items is currently ongoing.  Allstate has retained Alpine Restoration to inspect the contents items and create an inventory.  However, based on the inspection that has been completed to date, it is the determination of Allstate that the value of cleaning or replacement for contents items will exceed the remaining contents limit of Ms. Kabrich's policy.  Accordingly, Allstate is issuing the remaining limits to Ms. Kabrich.  Allstate is also issuing an additional five percent (5%) under the debris removal portion of the policy, for a total payment of $64,052.40.

Enclosed please find check number 551383402 in the amount of $64,052.40 payable to Halverson Northwest Group, P.C. in trust for Linda Kabrich.   This check may be cashed.  Ms. Kabrich does not waive any of her rights or defenses by cashing this check.

. . .

ECF No. 123-1.  (Emphasis added).

On **July 10, 2013** Allstate took Plaintiff's deposition.  Plaintiff was asked why she hadn't provided an inventory of items that needed to be replaced , to which she responded:

Q.     Are you aware of a specific list where it says, these items cannot be repaired or cleaned?

A.     No.

Q.     So how is Allstate supposed to know what, of your items, cannot be cleaned or repaired and need to be replaced?

A.     Well, I thought that was part of the process with TPI's interaction with Allstate.

MR. SIMPSON: Objection, form of the question.

Q.     (By Mr. Leid) I haven't seen anything, so I'm asking if you have seen anything that specifically says, here's a list of items that cannot be cleaned or repaired and need to be replaced. Have you seen that list?

A.     I have what TPI has done so far. I don't think, I think they halted work because they weren't

**ORDER - 10**

1    paid, so I don't, it has not all been done.

2        Q.    Is there any reason why you haven't gone

3    through your items and said, these items can't be

4    cleaned, we've got to replace them?

5        A.    I didn't think that was up to me. I thought

6    the company, I thought the insurance company and your

7    person that is doing the work with you, I thought that

8    was what they did.

9        Q.    Did you ever ask Allstate for specific help;

10   I need you, Allstate, to do my inventory for me?

11       A.    I thought that was what I was asking, I

12   thought that's what I, part of the process of hiring the

13   construction team to do all of that.

14       Q.    But did you ever specifically say to

15   Mr. Forrester or to Marianne or anybody else at Allstate,

16   I can't do my own inventory; I need you to do it for me.

17       A.    I didn't have access to it, so I couldn't do

18   it. I don't recall saying those words to them. I didn't

19   know that was something that I could do. I thought I had

20   hired the contractors and I thought that was part of the
     process.

21   ECF No. 112-1 (Deposition Transcript at 88-89).

22   **III.  LEGAL STANDARD**

23       The Federal Rules of Civil Procedure provide for summary adjudication

24   when "the pleadings, depositions, answers to interrogatories, and admissions on

25   file, together with the affidavits, if any, show that there is no genuine issue as to

26   any material fact and that the party is entitled to a judgment as a matter of law."

27   Fed.R.Civ.P. 56(c). In a motion for summary judgment, "[i]f the party moving for

28

**ORDER - 11**

summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.' " *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) ( citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc*., 793 F.2d 1100, 1103–04 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

Deference given to the nonmoving party has limits. A party asserting that a fact cannot be true or is genuinely disputed must support the assertion with admissible evidence. FED. R. CIV. P. 56(c) (2012). The "mere existence of a scintilla of evidence in support of the [party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (internal quotations marks omitted).

On cross motions for summary judgment, the burdens faced by the opposing parties vary with the burden of proof they will face at trial. When the moving party will have the burden of proof at trial, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." William W. Schwarzer, SUMMARY JUDGMENT UNDER THE FEDERAL RULES: DEFINING GENUINE ISSUES OF MATERIAL FACT, 99 F.R.D. 465, 487–488 (1984). In contrast, a moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric*, 809 F.2d at 630 (*citing Celotex*, 477 U.S. at 323, 106

**ORDER - 12**

S.Ct. 2548); *Kaiser Cement*, 793 F.2d at 1103–04. In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric*, 809 F.2d at 630–31 ( *citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir.1991). The evidence the parties present must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Pub. Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979).

The parties do not dispute that Washington state law governs this diversity dispute. Under Washington law, insurance policies are construed as contracts, and interpretation of policies is a matter of law. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wash.2d 477, 687 P.2d 1139, 1141–42 (1984). Policies are to "be given a fair, reasonable, and sensible construction" that comports with how the average purchaser of insurance would view the policy. *Grange Ins. Co. v. Brosseau*, 113 Wash.2d 91, 776 P.2d 123, 125 (1989).

**IV.  DISCUSSION**

**A.  Insurance Contract**

The elements of a cause of action for breach of contract in Washington are: (1) the existence of a valid contract, (2) breach of that contract, and (3) damages resulting from the breach. *Fid. & Deposit Co. of Maryland v. Dally*, 148 Wash.App. 739, 201 P.3d 1040, 1044 (2009). While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. *Conestoga Servs. Corp. v. Exec. Risk Indem*., 312 F.3d 976, 981 (9th Cir.2002).

**ORDER - 13**

1    In a breach of contract action, the insured is entitled to expectation

2    damages—the amount he or she would have received under the contract but for

3    the breach. *Woo v. Fireman's Fund Ins. Co.*, 150 Wash.App. 158, 208 P.3d 557,

4    563 (2009) ("The general rule regarding damages for an insurer's breach of

5    contract is that the insured must be put in as good a position as he or she would

6    have been had the contract not been breached.").   An insured may only recover

7    damages up to the policy limits in an insurance breach of contract action. *Polygon*

8    *N.W. Co. v. Am. Nat'l Fire Ins. Co.*, 143 Wash.App. 753, 189 P.3d 777, 789 (2008)

9    ("Washington law does not in fact force insurers to pay for losses that they have

10    not contracted to insure.").

11
12    Allstate asserts that even if it were liable for breaching the insurance

13    contract, which it is not, its maximum liability for damages is limited to the policy

14    limits of the insurance contract. *Allstate Prop. and Cas. Ins. Co.*, 134 Wash.App.

15    163, 139 P.3d 373, 376 (2006).   The Court agrees with Allstate, although Plaintiff

16    argues that this Court should certify to the highest state court the question:

17    whether a plaintiff in a first party insurance coverage case can be awarded

18    amounts in excess of the limits set forth in the insurance policy.[5]   The Court

19    disagrees and declines to certify this question for reasons that follow in this

20    opinion.

21    Allstate argues that Plaintiff has yet to submit a properly completed sworn

22    statement of proof of loss despite repeated requests to do so.  Allstate believes that

23    Ms. Kabrich's breach of the insurance contract (duty to provide a complete proof

24    of loss) should bar any coverage beyond the policy limits because it would

25    prejudice Allstate's ability to adjust and investigate Ms. Kabrich's alleged loss

26
27    [5]Successful claimants showing actionable bad faith in third party insurance
28    context can receive in excess of the policy limits under *Coventry Associates v.
     American States Ins. Co.*, 136 Wn.2d 269 (1998).

**ORDER - 14**

1   above and beyond the policy limits.  Ms. Kabrich does not dispute that she has not

2   fully complied with the proof of loss requirements.  Ms. Kabrich infers that TPI

3   was to complete her inventory.  TPI, however, was hired solely by Ms. Kabrich

4   and Allstate never consented to any arrangement between Ms. Kabrich and TPI.

5
6           Compliance with the insurance contract's requirements in case of loss

7   provision is met in Washington when the insured's submissions fulfill the purpose

8   of the proof of loss.  The purpose of a provision for proof of loss is to afford the

9   insurer an adequate opportunity for investigation, to prevent fraud and imposition

10  upon it, and to enable it to form an intelligent estimate of its rights and liabilities

11  before it is obliged to pay.  Its object is to furnish the insurer with the particulars

12  of the loss and all data necessary to determine its liability and the amount thereof.

13  *See* 14 Couch, Cyclopedia of Insurance Law (2d ed) § 49:373, p. 15.   Literal

14  compliance with a proof of loss provision is not required where compliance was

15  not possible.  *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386 (9th Cir. 2000).

16           In a growing majority of states, an insurer can deny coverage for failure to

17  submit a timely notification of loss only if the insurer proves prejudice as a result

18  of the delay.  *See Ostrager & Newman, Handbook on Insurance Coverage

19  Disputes* § 4.02(c)(2)-(4) (9th ed.1998) (citations omitted);  Insurance Litigation at

20  § 3.168–69; *see also* Insurance Claims and Disputes at § 3.03 n. 27 (noting that, in

21  a majority of jurisdictions, a failure to submit a timely proof of loss will not result

22  in denial of coverage unless prejudice is shown).

23           Allstate first requested a proof of loss on May 11, 2011.  Allstate repeated

24  its request to Ms. Kabrich (and/or her counsel) for a completed inventory of items

25  that needed to be replaced on  May 18, 2011,  June 29, 2011,  August 2, 2011,

26  October 28, 2011,  March 29, 2012, June 5, 2012, July 23, 2012, and April 1,

27  2014.

28

**ORDER - 15**

It is undisputed that a completed proof of loss was never submitted.  There is  evidence that Allstate was able to resolve the issue of coverage based on the partial proof of loss submitted, up to the Policy limits of $109, 200 despite Plaintiff failing to fulfill her requirement in submitting completed evidence of her claims.   Under her contractual duties, Plaintiff was solely responsible for filing the proof of loss and could not simply rely on TPI to make sure that the appropriate proof of loss was submitted in a timely manner if that was her intent. Importantly, Allstate did not declare a forfeiture of the Policy based on Plaintiff's failure to specify the exact amount of her loss.  Even if the personal  property was a total loss and Plaintiff had provided a completed sworn proof of loss, Allstate's obligation under the policy was to pay up to $109,200, the policy limits.  Allstate did just that, despite the missing completed proof of loss.  Although Plaintiff suggests, without authority, that the payments made to vendors (i.e., Rainbow International, Inc.) providing storage and other remediation services on her contents claim are not payments under her contents claim coverage, the Policy allows some discretion to Allstate for "Settlement Options," as set forth in the Undisputed Facts section.  Washington case law supports the notion that an insurance company may make payments directly to a third party vendor, rather than to the insured directly, so long as it is not prohibited by the language of the policy. *Baldwin v. Silver*, 165 Wn. App. 463 (2011).  The Court finds no such prohibition in the Policy and Plaintiff has not provided evidence to the contrary.

The Court finds that even though Allstate had been aware of the water damage and some of the losses to the property, there is no way it would have been able to estimate its obligations without having information from Plaintiff about what items were lost or damaged or nonsalvageable.  Allstate could not gather the information about Plaintiff's losses from any other source other than Plaintiff herself, and thus, Allstate satisfied its duty of inquiry by regularly communicating with Plaintiff regarding the information that was still needed to process her claims.

**ORDER - 16**

Thus, the court **GRANTS** summary judgment in favor of Allstate on Ms. Kabrich's breach of contract claim.

### B. Plaintiff's Bad Faith, CPA, and IFCA Claims

### 1. Bad Faith

"An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. v. Butler*, 118 Wash.2d 383, 823 P.2d 499, 503 (Wash.1992). The Washington Insurance Commissioner has promulgated regulations that define specific acts that constitute bad faith on the part of an insurer. Am. Mfrs. Mut. Ins. Co. v. Osborn, 104 Wash.App. 686, 17 P.3d 1229, 1234 (Wash.Ct.App.2001); see WAC 284–30–300 to –800. Any violation of these regulations constitutes a breach of the duty of good faith an insurer owes to an insured. Rizzuti v. Basin Travel Serv. of Othello, Inc., 125 Wash.App. 602, 105 P.3d 1012, 1019 (Wash.Ct.App.2005). The elements of bad faith are "duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 150 Wash.2d 478, 78 P.3d 1274, 1277 (Wash.2003).

To succeed on a bad faith claim, a policy holder must prove that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Smith*, 150 Wash.2d at 484, 78 P.3d 1274 (2003) (*quoting Overton v. Consol. Ins. Co.*, 145 Wash.2d 417, 433, 38 P.3d 322 (2002)). Whether an insurance company acted in bad faith is a question of fact. *Id*. Summary judgment for bad faith claims may only be granted if no there are no disputed material facts about the reasonableness of the insurer's conduct under the circumstances. *Id*. A court must deny summary judgment if reasonable minds could differ that the insurer's conduct was reasonable. *Id.* at 485–86. At oral argument, Plaintiff indicated that the only specific ground for Allstate's liability for bad faith is "undue delay."

**ORDER - 17**

However, it appears that if undue delay existed, it was caused by Plaintiff. Plaintiff has not presented any evidence that Allstate underpaid the contents claim, or of any other damages.   Because a contractual obligation is the underpinning of a bad faith claim, Ms. Kabrich cannot maintain such a claim unless policy benefits are due under the contract.  As discussed herein, Ms. Kabrich cannot maintain a claim for breach of contract. Without a breach of contract, Ms. Kabrich has no basis for a bad faith claim. Accordingly, Allstate's motion for summary judgment on this claim is **GRANTED**.

## 2. CPA

The elements for a Washington Consumer Protection Act ("CPA:)  action are "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation." *Bain v. Metro. Mortg. Grp., Inc*., 175 Wash.2d 83, 285 P.3d 34 (Wash.2012). The only issue relevant to this motion is whether Plaintiff suffered an injury compensable under the CPA.  None of the elements of a CPA claim are met by the evidence in this case.  Emotional damages and the costs of litigation are not compensable injuries under the CPA.  *See Ledcore Indus., Inc. v. Mut. of Enumclaw Ins. Co.*, 150 Wash.App. 1, 206 P.3d 1255, 1262 (Wash.Ct.App.2009); *Sign–O–Lite Signs, Inc. v. DeLaurenti Florists, Inc*., 64 Wash.App. 553, 825 P.2d 714, 720 (Wash.Ct.App.1992).

Plaintiff's CPA claim is predicated on the argument that she sustained injury as a result of Allstate's delaying payment of funds over and above the policy limit that Plaintiff seeks in this litigation.  Because Plaintiff produced no evidence suggesting that she was underpaid by Allstate, the court finds that Plaintiff suffered no injury compensable under the CPA.  Moreover, without a showing of injury, the court must as a matter of law **GRANT** summary judgment as to Plaintiff's CPA claim.

**ORDER - 18**

### 3. IFCA

The Insurance Fair Conduct Act ("IFCA") became law on December 6, 2007.  Codified at Revised Code of Washington § 48.30.015, the IFCA creates a cause of action against insurance companies for unreasonably denying claims and benefits and provides for treble damages and attorney's fees. Several courts have held that the IFCA does not apply retroactively. *See Malbco Holdings LLC v. Amco Ins. Co.*, 546 F.Supp.2d 1130 (E.D.Wash.2008).  A court "may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated [certain insurance regulations], increase the total award of damages to an amount not to exceed three times the actual damages." RCW 48.30.015(2).

In order to survive summary judgment on her IFCA claim, Plaintiff must establish a violation of the IFCA regulations by unreasonably denying coverage, unreasonably denying payment of benefits, or possibly violating one of the five WAC rules (WAC 284–30–330, WAC 284–30–360, and WAC 284–30–370). The IFCA provides that a violation of any of the WAC sections is "a violation for the purposes of subsections (2) and (3)" of the statute.  RCW 48.30.015(5). This contention fails as well. As Allstate has noted, and the district courts in Western Washington have determined, that the alleged WAC violations do not provide an independent cause of action under the IFCA absent an unreasonable denial of coverage.  *Weinstein & Riley v. Westport Insurance Corp*., 2011 WL 887552 at * 30 (W.D.Wash.2011).

To survive summary judgment on her claim for attorney's fees, Plaintiff must establish that Defendant has unreasonably withheld payment of benefits. The Court has determined that Allstate did not unreasonably withhold payment of benefits.  Here, viewing the facts in a light most favorable to Plaintiff, a jury could not find that Allstate acted unreasonably. There is sufficient evidence to support a

**ORDER - 19**

finding that Plaintiff never submitted a completed itemized claim for damaged personal property to Allstate. Yet Allstate paid up to the limits of liability for Plaintiff's personal property.  There must be an unreasonable denial of coverage or payment.  It can't be said that payments totaling $251,113.13 (which includes the $109,200 policy limits for the disputed contents claim) is an unreasonable denial, in light of Plaintiff's failure to comply with her reporting obligations under the Policy.  Because the Court finds that Allstate did not breach the insurance contract or unreasonably withhold benefits, and Plaintiff fails to show damages or any evidence of alleged violations of the WAC, there is no basis for an IFCA claim to go forward.

### 4.  Attorney Fees

Attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wash.2d 37, 811 P.2d 673 (1991), are available only when the insured prevails. *Hardy v. Pemco Mut. Ins. Co.*, 115 Wash.App. 151, 157, 61 P.3d 380 (2003).  Plaintiff has not prevailed. The Court, therefore, denies her request for attorney fees and costs.

**IT IS ORDERED** that Defendant's Motion for Summary Judgment Dismissal, **ECF No. 122**, is **GRANTED.**  Plaintiff's Cross-Motion For Summary Judgment/Motion For Certification, **ECF No. 135**, is **DENIED**.

**IT IS SO ORDERED**.  The District Court Executive is directed to enter this order, enter judgment consistent with this order, and **CLOSE FILE.**

**DATED** this 12th  day of August, 2014.

*s/Lonny R. Suko*

_____
LONNY R. SUKO
Senior United States District Judge

**ORDER - 20**